1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                    WESTERN DIVISION

4        THE HONORABLE GEORGE H. WU, JUDGE PRESIDING

5

6    IN RE: A-POWER ENERGY GENERATION        )
     SYSTEMS LTD. SECURITIES LITIGATION,     )
7                                            )    MASTER DOCKET NO.:
                                             )    MDL 11-2302-GW-CW
8                                            )    CLASS ACTION
     _____)
9

10

11            REPORTER'S TRANSCRIPT OF PROCEEDINGS

12

13                 Los Angeles, California

14          Monday, January 9, 2012, 9:44 A.M.

15

16

17     PLAINTIFFS' MOTIONS FOR CONSOLIDATION AND APPOINTMENT OF

18                      LEAD COUNSEL

19

20                              PAT CUNEO CSR 1600, CRR-CM
                                Official Reporter
21                              Roybal Federal Building
                                Room 181-E
22                              255 East Temple Street
                                Los Angeles, California 90012
23                              (213) 617-1817
                                grammacuneo@aol.com
24

25

```
 1   APPEARANCES OF COUNSEL:

 2   REPRESENTING A-POWER:   LIEFF, CABRASER, HEIMANN & BERNSTEIN
                             BY:  JOY A. KRUSE, ATTORNEY AT LAW
 3                           275 Battery Street
                             29th Floor
 4                           San Francisco, California  94111-3339
                             (415) 956-1000
 5                           jakruse@lchb.com

 6   REPRESENTING A-POWER:   WILSON, SONSINI, GOODRICH & ROSATI
                             BY:  BORIS FELDMAN, PARTNER
 7                                ATTORNEY AT LAW
                             650 Page Mill Road
 8                           Palo Alto, California  94304-1050
                             (650) 565-3500
 9                           boris.feldman@wsgr.com

10   FOR PLAINTIFF LI:       THE ROSEN LAW FIRM P.A.
                             BY:  LAURENCE ROSE, ESQ.
11                                ATTORNEY AT LAW
                             355 South Grand Avenue
12                           Suite 2450
                             Los Angeles, California  90071
13                           (213) 785-2610
                             lrosen@rosenlegal.com
14
     FOR PLAINTIFF LEVINSON:
15
                             COHEN, MILSTEIN, SELLERS & TOLL
16                           BY:  DANIEL S. SOMMERS, ATTORNEY AT LAW
                             1100 New York Avenue, NW
17                           Suite 500, West Tower
                             Washington, DC  20005
18                           (202) 408-4600
                             dsommers@cohenmilstein.com
19
     FOR PLAINTIFF BAETA:    FARUQI & FARUQI, LLP
20                           BY:  VAHN ALEXANDER, ESQ.
                                  ATTORNEY AT LAW
21                           369 Lexington Avenue
                             10th Floor
22                           New York, New York 10017-6531
                             (212) 983-9330
23                           valexander@faruqilaw.com

24

25
```

```
 1   FOR PLAINTIFF RIES:      ROBBINS, GELLER, RUDMAN & DOWD LLP
                              BY:   TRAVIS E. DOWNS, III
 2                            and   BRIAN O'MARA
                                    ATTORNEYS AT LAW
 3                            655 West Broadway
                              Suite 1900
 4                            San Diego, California  92101
                              (619) 1058
 5                            tdowns@rgrdlaw.com

 6   FOR DEFENDANT LECKIE:    BARNES & THORNBURG LLP
                              BY:  KEVIN D. RISING, ATTORNEY AT LAW
 7                            2049 Century Park East
                              Suite 3550
 8                            Los Angeles, California  90067
                              (310) 284-3888
 9                            kevin.rising@btlaw.com

10   FOR DEFENDANT LECKIE:    BARNES & THORNBURG LLP
                              BY:   VINCENT PAUL (TRACE) SCHMELTZ, III
11                                  ATTORNEY AT LAW
                              One North Wacker Drive
12                            Suite 4400
                              Chicago, Illinois 60606-2833
13                            (312) 357-1313

14

15

16

17

18

19

20

21

22

23

24

25
```

*Pat Cuneo, Official Reporter*

```
 1   LOS ANGELES, CALIFORNIA; MONDAY, JANUARY 9, 2012; 9:44 A.M.

 2                              -oOo-

 3          THE COURT:  All right.  Calling the matter of

 4   A-Power Energy Generation Systems, the MDL; and let me have

 5   the appearance of counsel starting with plaintiffs' counsels

 6   first.

 7          MR. ROSEN:  Good morning, Your Honor.

 8   Laurence Rosen for Jason Li.

 9          THE COURT:  All right.

10          MR. SOMMERS:  Good morning, Your Honor.

11   Daniel Sommers, Cohen, Milstein, Sellers & Toll for lead

12   plaintiff and movant Richard Levinson.

13          THE COURT:  All right.

14          MS. KRUSE:  Good morning, Your Honor.  Joy Kruse

15   of Lieff, Cabraser, Heimann & Bernstein for the A-Power

16   Investor Group.

17          THE COURT:  All right.

18          MR. ALEXANDER:  Good morning, Your Honor.

19   Vahn Alexander on behalf of Carlos Baeta.

20          THE COURT:  All right.

21          MR. DOWNS:  Good morning, Your Honor.

22   Travis Downs on behalf of the derivative plaintiff.

23          THE COURT:  All right.

24          MR. FELDMAN:  Boris Feldman of Wilson, Sonsoni,

25   Goodrich & Rosati, Palo Alto, California, for the company.
```

```
 1              THE COURT:  Is it really necessary to give me the
 2    location?
 3              MR. FELDMAN:  It was for me.  I don't know if it
 4    was for you.
 5              THE COURT:  All right.
 6              MR. RISING:  Good morning, Your Honor.
 7    Kevin Rising of Barnes & Thornburg on behalf of
 8    Robert Leckie.
 9              THE COURT:  All right.
10              MR. SCHMELTZ:  Good morning, Your Honor.
11    Vincent Schmeltz, Barnes & Thornburg, Chicago, with a
12    pro hac pending also for Mr. Leckie.
13              THE COURT:  All right.  Nobody likes a smart
14    aleck.
15              We're here on the question of consolidation, also
16    appointment of lead plaintiff and plaintiff's counsel.  I've
17    issued a tentative.  I presume everybody has seen it and
18    read it?
19              MS. KRUSE:  Yes, Your Honor.
20              THE COURT:  Anybody want to argue something?
21              MR. ROSEN:  Your Honor, for Jason Li, may I argue?
22              THE COURT:  Sure.  I just asked.
23              MR. ROSEN:  Firstly, in your tentative, you
24    address the Lax-Olsten factors; and if you look at the
25    Lax-Olsten factors, there's four Lax-Olsten factors.
```

6

1              You'll see that Mr. Li has the largest financial

2    interest for two of the three applicable matrix under

3    *Lax-Olsten*.

4              Firstly, shares purchased during the class period,

5    Mr. Li purchased 184,477 shares versus the whole A-Power

6    Group.

7              THE COURT:  Let me stop.  I thought the last

8    factor was the most important.

9              MR. ROSEN:  It is.  It is.  And under the last --

10   so for the first two factors, Mr. Li wins; exceeds them.

11   For the last factor, total losses, there's a ten percent --

12   approximately ten percent difference or so.

13             So it's -- but that, if you include all five

14   investors, he has more than two times the loss of the

15   largest investor in the A-Power Group.

16             So what, you know, so what happens is that

17   Mr. Treadwell with a $65,000 loss gets a say in the

18   litigation; and he has, you know, less than ten percent of

19   the loss of Mr. Li.

20             And so Mr. Li gets frozen out of the litigation

21   because the A-Power Group has agglomerated, you know, the

22   people with small losses to overtake him.

23             I mean, he's far and away the largest -- has the

24   single largest financial interest in this litigation from

25   anybody by far.

| | |
|---|---|
| 1 | THE COURT:  The statute indicates that it can be |
| 2 | an investor or group of investors and so, you know -- |
| 3 | MR. ROSEN:  Yes, Your Honor. |
| 4 | THE COURT:  -- I understand your point; but |
| 5 | wouldn't that be pretty much the case any time you can -- |
| 6 | you know, let's put it this way. |
| 7 | This is not the situation where, you know, a |
| 8 | plaintiff's counsel has, you know, stood outside a, you |
| 9 | know, brokerage firm asking:  Did you invest?  And gotten |
| 10 | these really teeny, little number of investors and just |
| 11 | grouped them all together to amass an investment group. |
| 12 | We have five individuals here.  There may be a |
| 13 | question that, well, you know, at some point in time a |
| 14 | number that's greater than five may be unwieldy or something |
| 15 | of that sort. |
| 16 | But it seems to me this is provided for by the |
| 17 | statute; and it seems after the *Cavanaugh* decision, the |
| 18 | *Cavanaugh* decision says:  Let's not make too much of this. |
| 19 | It's not that complicated and, you know, this is not a |
| 20 | beauty contest in that physical sense. |
| 21 | MR. ROSEN:  Yes, Your Honor.  It's not a beauty |
| 22 | contest; but there is -- there is a requirement that there |
| 23 | be a cohesiveness and a basis for this group; and -- |
| 24 | THE COURT:  Well -- |
| 25 | MR. ROSEN:  And here -- here, you know, most |

1    courts who've addressed this issue and the cases that are

2    cited by the A-Power Group, there are groups of two or three

3    people or there are groups where each of the individuals

4    have similar levels of financial interest, not where you

5    have some with 411,000 grouped with someone with 65,000.

6              THE COURT:  Well, couldn't Mr. Li found somebody

7    to be his friend?

8              MR. ROSEN:  He could have.

9              THE COURT:  Why didn't he?

10             MR. ROSEN:  Because our reading of the case law

11   was -- I mean, we have several other clients who would be --

12   who would have liked to work in this.

13             But given the court's prime decision in *Folsom* for

14   Indymac which we submitted recently where Your Honor, you

15   know, suggested that there had to be something more than

16   just a declaration saying that we agree to work together, we

17   thought it was best to --

18             THE COURT:  No, I don't think *Folsom* is exactly

19   like this one.

20             MR. ROSEN:  Well, there's no question -- the issue

21   of uniqueness is not an issue; but, still, you had a

22   situation where the single largest investor by far is now

23   frozen out of having any say in the litigation.

24             And that's not what the intent of the PSLRA is.

25   The intent of the PSLRA is that the individual with the

1    largest financial interest should be driving the litigation,

2    and he has two and a half times the interest of -- or two

3    times the interest of anyone else and twelve times the

4    interest of some of the other group members.

5         So in that respect -- and now it's also -- it's

6    also not clear whether there's other sort of members of this

7    group.

8         Now, Mr. Shaw and Mr. Rooney have different

9    certifications than the other plaintiffs; and if you look at

10   paragraph 4 of Mr. Rooney and Mr. Shaw's certification, they

11   say:  We have authorization from any other corporation or

12   person to bring this litigation on their behalf.

13        So Mr. Shaw has a list of four different accounts

14   one of which is a co-account with his wife which I assume

15   that's what that covers.  But for Mr. Rooney it's not clear

16   what other corporation or partnership or person that he's

17   also serving; and so is this group larger than five, you

18   know?  And that's another open question that if you read

19   those certifications.  So, you know, the end result --

20        THE COURT:  Let me ask.  I wondered in the

21   tentative whether or not anybody was going to want to engage

22   in any form of discovery on this stuff; and are you saying

23   that you want to engage in discovery on this stuff?

24        MR. ROSEN:  Well, I think we should have some

25   representation when they have that -- when they have that --

1    I don't want to waste -- Your Honor, I don't want to waste

2    time, you know.  But they should be able -- you know, it's

3    very clear there are two different certifications they have

4    submitted.

5           One says we represent other people and one doesn't

6    for the four different clients, two say -- five different --

7    three saying we don't have that provision, two do.

8           So the question is -- and Mr. Shaw we see they

9    break out who the other entities are, and they're all

10   related to family entities, right?

11          So that's, you know, I can understand that's more

12   or less one -- he and his wife, you know, you might count

13   that as one, you might not.  But Mr. Rooney, there is notice

14   indication who or what those other entities might be.

15          So a representation as to that would let us know

16   whether we're going beyond the five-person group to some

17   larger level; but that just -- you know, I mean, that just

18   serves to show that when you start letting these groups get

19   bigger and bigger that the purpose of the PSLRA is not being

20   served.

21          And if under *Lax-Olsten* we have -- we win under

22   *Lax-Olsten*, two to three, and the third one where they're

23   neck and neck, why would you -- it doesn't serve the

24   interests of PSLRA to take this away -- to take the role

25   away for Mr. Li.

1          THE COURT:  This is an argument for the Ninth

2     Circuit.  I'd certify it for immediate PL.

3          MR. ROSEN:  Well, I don't think we're going to

4     waste --

5          THE COURT:  It's not a waste, you know.  You have

6     to stand on your --

7          MR. ROSEN:  Now, look, Your Honor, I recognize

8     there's discretion in these instances; but this is a

9     situation in which there's --

10          THE COURT:  Well, let me stop you.  A part of the

11     problem that I have is that a lot of stuff that you're

12     talking about is stuff that -- this is why I think this case

13     is controlled by *Cavanaugh* -- and, you know, I kind of

14     disagree with the Ninth Circuit that said, you know, that

15     what the district court was trying to do.

16          I mean, I sort of agree, obviously, with the

17     ultimate decision that the Ninth Circuit made insofar as

18     reversing in *Cavanaugh* on the, you know, selection of the

19     lead counsel.

20          But it seemed to me that what they also said was

21     that you couldn't do an inquiry into these other areas such

22     as, you know, the background of these people, et cetera, et

23     cetera, et cetera.

24          A lot of that stuff, you know, if you can't do

25     that, I don't understand why -- a lot of the stuff you're

1    talking about is precisely that type of background stuff.

2            MR. ROSEN:  Your Honor, I'm not I'm not suggesting

3    you should go into the background of who he is or one guy is

4    a -- Mr. Rooney is a caregiver.  That was his role.

5            THE COURT:  I mean, obviously, I don't care if

6    he's a caregiver but --

7            MR. ROSEN:  It doesn't matter whether he's a

8    gardener or a caregiver or a CEO.  I agree.  But what I'm

9    saying is who really has the largest financial interest

10   here?  And Mr. Li does.  He does.

11           THE COURT:  Well, individually, he does but not

12   obviously --

13           MR. ROSEN:  But even if you look -- even if you

14   compare him to the group, even if you compare him to the

15   group, he's neck and neck at one -- on that one *Lax-Olsten*

16   factor and he beats them on the two others.

17           So under those circumstances, you still -- he's

18   beating two out of three; and there's a question of, you

19   know, whether it's -- you should consider them as a single,

20   as a single -- now, some courts have said:  Well, look,

21   we'll let you have a group of five relatives to someone else

22   because the largest person in your group -- if the largest

23   person in your group exceeded Mr. Li's interest, I wouldn't

24   be standing here and arguing --

25           THE COURT:  Well, you couldn't be.

```
 1            MR. ROSEN:  -- right?

 2            But most courts -- most courts have looked at that

 3    and have said:  Well, where you've clearly got a group who's

 4    -- the effect of which is to -- is to overtake the person

 5    with by far the largest interest, that's not the purpose.

 6    That violates the purpose of the PSLRA.

 7            And so that's where the judgment under Cavanaugh

 8    and largest financial interest lies, is it's okay.  Who

 9    has -- what is the largest financial interest under the

10    Lax-Olsten factor given the composition of that group?

11            THE COURT:  I understand your arguments.  I think

12    I have addressed them.

13            Let me ask.  Although let me ask counsel for the

14    group as to Mr. Rooney.  What are his, I guess,

15    "certifications" if that's the term?

16            MS. KRUSE:  Your Honor, my understanding is that

17    there are no other entities.  Mr. Rooney would be acting as

18    himself as an individual and that's not an issue.

19            THE COURT:  Okay.

20            MS. KRUSE:  I think Mr. Rosen is focused on some

21    verbiage in a form and extrapolated from there.  There are

22    five individuals in this group.

23            THE COURT:  All right.  Anything else from anyone?

24            MR. SOMMERS:  Yes, if I may, Your Honor.

25            THE COURT:  All right.
```

1     MR. SOMMERS:  Your Honor, Dan Sommers for lead

2  plaintiff-movant Richard Levinson.  I feel like I'm swimming

3  a bit upstream here, but let me just make a few points on

4  both of the arguments.

5     First, I agree with the arguments that Mr. Rosen

6  put forth with respect to aggregation.  In a way I feel as

7  if the court accepted our arguments but I understand reaches

8  a different conclusion with respect to aggregation because,

9  as the court found, the record shows that this really does

10  appear from the evidence that's been put in and the

11  arguments that this is simply an unaffiliated group of

12  investors who have no pre-litigation connection whatsoever

13  and were only put together for the sole purpose of

14  aggregating losses in order to become the lead plaintiff in

15  this litigation.

16     Now, many courts have found under those

17  circumstances that that type of a group is inadequate for

18  lead plaintiff.

19     THE COURT:  You know, frankly, but, you know,

20  again, I wasn't joking when I said I'd certify this issue.

21  I think it is an issue that probably should be addressed by

22  the circuit; and, apparently, you know, there's a basis for

23  going to the circuit at this stage, you know, if the

24  court -- you know, I'm not saying that I'm absolutely sure

25  on this.

1    I'm just saying, you know, in reading *Cavanaugh*,

2    you know, *Cavanaugh* says don't to this and don't do that;

3    and so to say:  Okay.  I'm not going to do this.  I'm not

4    going to do that.  I'm just going to look, you know, at the,

5    you know, amounts and make the determination.

6         MR. SOMMERS:  Your Honor, I understand that and I

7    appreciate that.

8         One final point to make on the aggregation issue.

9    I don't want to beat this to death.  But one thing that is

10   absent from the submissions put in by the A-Power Group is

11   any evidence or any explanation whatsoever of what benefit

12   this aggregated group would confer upon the investor class.

13        There's nothing in any of the submission that

14   indicates anything that would advantage the investors.  So I

15   understand the court's ruling.  I just want to make sure

16   that that's also on the record; that there is no evidence of

17   that whatsoever.

18        THE COURT:  Sometimes the lead plaintiff dies and

19   becomes incapable of proceeding with the litigation.

20        MR. SOMMERS:  Well, fortunately in this case, Your

21   Honor, and I guess this will lead to the next point, is that

22   there is another movant who is not affected by either the

23   aggravation issue or by the next issue I'd like to briefly

24   raise which is the timeliness of the filing of the lead

25   plaintiff motions.

1          THE COURT:  Yes.

2          MR. SOMMERS:  And I recognize that the court has

3    addressed that and I had an opportunity to quickly look at

4    the court's tentative ruling.

5          I understand that there is no case law on point on

6    this fact pattern and I understand that and that kind of

7    cuts both ways.  I mean, there's none either way --

8          THE COURT:  This could be another basis for an

9    immediate --

10          MR. SOMMERS:  Well, I will get to that issue in a

11    moment, Your Honor, but I agree.

12          But I would like to raise just a couple of points

13    based upon some of the language in the tentative ruling, one

14    of which is that the court seems to indicate that the

15    reading that we make of the situation is unduly complex in

16    some way.

17          And I'd like to just disabuse the court of that --

18    of that impression because really our reading of the facts

19    and the statute is really quite simple.

20          The reality is that when the notice was issued in

21    this case that it was July 1 here in Los Angeles where the

22    case was pending.  60 days from that brings you to

23    August 30th.

24          THE COURT:  In other words, July 2.  It was 12:15

25    a.m. on July 2nd.

1          MR. SOMMERS:  The notice happened to be

2    characterized, the label that said "July 2" but it also had

3    the exact time; and, of course, anybody who reads that would

4    know that in California, where the case was pending, it was

5    the prior day.  It was obvious and certainly it was not

6    complicated.

7          Mr. Levinson -- we figured it out.  Another

8    movant, Baeta who is here today, they figured it out, too,

9    so it's not certainly not complicated and it certainly

10   couldn't have been complicated for counsel for Mr. Li

11   because they issued the notice.  It was their case.

12         They knew full well when the notice was issued

13   where the case was pending.  The notice itself said where

14   the case was pending.  There could be no confusion

15   whatsoever.

16         Why these movants decided to move a day late, I

17   don't know.  But it was a deadline created by Congress.

18   It's a statutory deadline, and there certainly is no

19   unfairness in enforcing that deadline particularly if the

20   court is going to exercise its discretion.

21         THE COURT:  If you look -- I mean, the notice -- I

22   presume the notice is the notice as it appears in the

23   publication; and if the publication says "July 2nd, 12:15

24   a.m.," isn't that supposed to be the date and time?

25         ms. som:  Well, it tells you when in reality the

1    notice was issued and the case is pending here in

2    California.  It was just a happenstance that the notice had

3    the characterization of New York.

4           But the reality is that when that was issued, it

5    was July 1, 2011, here in California.  That is where the

6    case was pending.  That is when the clock starts running.

7    That's when Congress' statutory period begins to run.

8           And there is no provision for extending that; and

9    we cited cases which interpret that deadline strictly as

10   that deadline should be constricted.

11          Now, if the court were to decide to use its

12   equitable powers to extend that deadline, I would suggest

13   that it's a statutory deadline and it's not one that is

14   amenable to an extension.

15          The court would have to look to questions of

16   fairness and prejudice; and, again, as I articulated, there

17   is no unfairness to enforcing this.

18          These are sophisticated lawyers who practice in

19   the area.  They can read the notice.  It says the case is in

20   California.  It says when the notice was issued.  We read

21   it.  Another movant read it.  We filed on time.  There's no

22   reason not to enforce that.  It's not burdensome and it's

23   not complicated.

24          And one additional point on this is that there is

25   no prejudice of any real type to enforcing the deadline.

1    There's not going to be a dismissal of a claim.

2           The other movants are not going to lose any right

3    to participate in the action.  They'll still be class

4    members, and there is a lead plaintiff-movant who has

5    standing who unquestionably filed the motion in a timely

6    fashion; and no one has challenged the adequacy of

7    Mr. Levinson or the typicality of his claims.

8           One final point, Your Honor, that you raised

9    earlier and put into the tentative is this idea of there

10   could be an appellate issue here.  And I agree.

11          I understand that Your Honor disagrees with the

12   reading that we have of the law and of the statutory

13   deadline that Congress has imposed.

14          But there is no question that it does impose a

15   risk in this litigation that a party, someone with standing,

16   at some later point in this litigation could challenge the

17   appointment of a lead plaintiff or a group of lead

18   plaintiffs who may not have filed their motion in a timely

19   fashion.

20          And any judgment at the end of this case could be

21   subject to question and an appellate court could read things

22   differently than Your Honor has read it in the tentative

23   ruling.

24          And so the issue is:  Why should this court take

25   the risk?  Why assume a risk?

1          THE COURT:  It's not my risk.  It's my

2    interpretation of the law.

3          MR. SOMMERS:  Well, the issue is a risk to the

4    case.  Why proceed with an entire litigation -- these cases

5    are notoriously complicated, document intensive, very

6    expensive to litigate -- and proceed the whole case and then

7    at the end of it have some class member come in and

8    challenge the appointment of the lead plaintiff; that the

9    wrong plaintiff was appointed; it was a plaintiff who did

10   not have standing effectively to be the lead plaintiff in

11   the case.

12         And there's a simple solution.  I guess I can

13   offer two solutions to the court to reduce this risk to zero

14   one of which, of course, is to appoint Mr. Levinson as the

15   lead plaintiff in the case.  Nobody could challenge the

16   timeliness of Mr. Levinson's motion and nobody has.

17         THE COURT:  Why doesn't Mr. Li and Mr. Levinson

18   get together?  In that case, there would be a group that

19   would be, you know, an insurmountable group.

20         MR. SOMMERS:  Well, Your Honor, I don't know if

21   the court is joking or not; but, certainly, that is the

22   second part of the solution that I'm proposing is that, at a

23   minimum, to reduce this risk join Mr. Levinson --

24         THE COURT:  I cannot join.  I am not a marriage

25   counselor.  In other words, if they elect to join

1    themselves, then obviously, you know, the situation would be

2    slightly different.

3            But, you know, I only have what I have and that is

4    there is at this point in time there are three competing --

5    well, one group and two individuals -- who want to be the

6    lead plaintiff; and I have to select between the three.

7            MR. SOMMERS:  Well, Your Honor, I appreciate the

8    court's role in the case.  I do think that the court has the

9    power to make sure that the class is properly represented.

10           THE COURT:  Not if you -- not according to

11   *Cavanaugh*.  The court's power in this regard is extremely

12   limited and that was also expressed in -- what is it?  The

13   *Cohen* case as well.  I mean, it's limited here.  I don't

14   have that much power.

15           MR. SOMMERS:  I appreciate that, Your Honor.  I

16   did want to make that point; that that is the solution and

17   that is in the best interests of the class to eliminate any

18   risk that this -- that a judgment in this case could be

19   challenged on this basis in a later stage of the litigation.

20           THE COURT:  That's why there's always new law in

21   this area.

22           MR. SOMMERS:  I appreciate Your Honor giving me

23   time to express my views.

24           THE COURT:  Okay.

25           Anything else from anybody?

```
 1              MS. KRUSE:  I would like to add one thing.
 2              THE COURT:  All right.
 3              MS. KRUSE:  Your Honor, Cohen Milstein hasn't
 4    raised this but they raised it in their reply brief on pages
 5    5 and 6; and we did not have a briefing schedule that
 6    allowed a surreply so I want to put this issue to rest and
 7    give the court the opportunity to address it.
 8              Appointing A-Power Investor Group leads to the
 9    presumption that their selection of counsel is to be
10    affirmed by the court and that is Lieff Cabraser as lead
11    counsel.
12              The Cohen Milstein firm has talked about the fact
13    that in our New York filing done on the same day that our
14    lead plaintiff motion was filed in this court, we reference
15    the Pomerantz firm.
16              And, Your Honor, as lead counsel, we have the
17    opportunity to delegate work to the Pomerantz firm if the
18    court is agreeable to that.
19              I know the court has rendered decisions.  I am
20    mindful of your Folsom v. Indymac decision where you had a
21    co-lead counsel situation.  That's not what we're proposing
22    here at all.  Where you want to avoid double billing.  You
23    dropped a footnote to that effect.
24              I know that many courts focus on that and that's a
25    reason why they will turn to a group and say:  You may have
```

1  this lead counsel but I'm going to closely scrutinize the

2  involvement of any other counsel.

3          Now, in my experience when cases involve, you

4  know, a heavy workload, it is sometimes advantageous to be

5  able to delegate discrete projects at a given moment in time

6  to another firm.

7          If the court is not comfortable with that, we're

8  obviously amenable to do whatever the court directs.

9          THE COURT:  Let me just ask.  The question is not

10  presented to me at this point in time of, you know, multiple

11  counsel.  The question is whether or not -- who I'm going to

12  appoint as plaintiffs' lead counsel.  I don't think it's

13  anyone but your firm at this point.

14          MS. KRUSE:  That's correct.

15          THE COURT:  Now, your firm may attempt in the

16  future to add on other firms to assist; but that, I suppose,

17  would be an issue which where I probably would more or less

18  address it in the class certification or something, wouldn't

19  I?

20          MS. KRUSE:  It certainly -- you had the

21  opportunity to do it then and, as a number of courts have

22  noted, you have the ultimate hammer which is that you

23  determine the reasonableness of fees.

24          And if you find there's -- the delegation was

25  inappropriate or any duplication of effort was done, then

1  you'll address that in the fees.

2          THE COURT:  I would agree.

3          MS. KRUSE:  So, you know, this is my first

4  appearance before Your Honor; and I just want there to be --

5  you know, there's been a lot of kind of almost *ad-hominis*

6  attacks against us about the Pomerantz issue; and I wanted

7  to clear that up.

8          THE COURT:  Okay.  Anything else from anyone?

9                    *(No response.)*

10          THE COURT:  Defense counsel has been remarkably

11  silent.

12          MR. FELDMAN:  No, Your Honor, and I apologize for

13  offending.

14          THE COURT:  Did you already?  I had missed that.

15  Were you that subtle?

16                    *(No response.)*

17          THE COURT:  All right.  Anything else from anyone

18  on this matter?

19                    *(No response.)*

20          THE COURT:  All right.  I will make my tentative

21  my final on these points.

22          Anything else that we need to do today?

23          MR. SHAW:  Just to introduce myself, Your Honor.

24  I'm Terry Shaw, one of the plaintiffs associated with --

25          MS. KRUSE:  I apologize.  I meant to do that, Your

1   Honor.

2          THE COURT:  I was going to say you don't look like

3   an attorney.

4          MR. SHAW:  No.  Thank you.

5          MS. KRUSE:  It's the honest face.

6          THE COURT:  I wouldn't go that far.  He's just

7   there.

8          All right.  Thank you very much.  Let me just ask

9   Javier.  What's the next thing that's scheduled in this

10  matter?

11              *(Court and the clerk conferred.)*

12          THE COURT:  Let me talk with counsel then.

13          Let me ask.  We've talked somewhat jokingly about

14  appeals, you know, and I don't really mind if people appeal.

15  But it does kind of do a little haywire in terms of

16  scheduling.

17          Does any party envision an appeal on these

18  matters?

19          MR. ROSEN:  Your Honor, ordinarily I would not --

20  this is an interesting issue because it comes up in every

21  securities case like this, you know.  Should you put a group

22  together or should you go with your single largest?

23          And it varies from court to court and one never

24  knows what the court wants.  So it would be nice to have

25  a --

|    |    |
|----|----|
| 1  | THE COURT:  I agree.  You're preaching to the |
| 2  | choir, you know.  I have no problems.  I don't take these |
| 3  | things personally if I get -- if somebody appeals and if I |
| 4  | get reversed.  It doesn't bother me.  I mean, that's part |
| 5  | and parcel of being a trial judge. |
| 6  | But the only reason I ask is just for purposes of |
| 7  | scheduling.  In other words, because what I will probably do |
| 8  | next is to have a scheduling conference with the remaining |
| 9  | parties; and I would want to do that within a relatively |
| 10 | short period of time but that wouldn't bar you.  In other |
| 11 | words, the appeal time runs whenever it runs.  But I just |
| 12 | want to get a sense of whether or not there's going to be an |
| 13 | appeal. |
| 14 | MR. ROSEN:  At the moment, I don't have any plan |
| 15 | to appeal, Your Honor. |
| 16 | THE COURT:  Okay. |
| 17 | MR. SOMMERS:  Your Honor, on behalf of |
| 18 | Mr. Levinson, in all candor, it is something we would need |
| 19 | to discuss with the client and make a determination in due |
| 20 | course. |
| 21 | THE COURT:  Okay.  Why don't we do this? |
| 22 | Let me schedule what, in effect, will be a will be |
| 23 | a 26(f) but with the primary focus being on class |
| 24 | certification because that pretty much is the next big |
| 25 | issue; and let me ask the parties. |

```
 1              I presume the parties have thought about it.  The
 2    parties have been discussing certification, discovery,
 3    et cetera, et cetera, or the need for it --
 4              MS. KRUSE:  No, Your Honor.
 5              THE COURT:  -- at all?
 6              MS. KRUSE:  Not yet.
 7              THE COURT:  All right.
 8              MS. KRUSE:  I'm happy to discuss it with
 9    Mr. Feldman.
10              THE COURT:  All right.  Let me do this.  Let me
11    schedule this matter for the 2nd of February as a
12    scheduling conference, or do you think I need to wait that
13    long?
14                        (No response.)
15              MS. KRUSE:  I think, in light of the specter of
16    some appeals that it might be good to --
17              THE COURT:  Okay.
18              MS. KRUSE:  -- hear back from them and have some
19    resolution on that before we go ahead.
20              THE COURT:  You're familiar with our local rule
21    insofar as class certifications are concerned?
22              MS. KRUSE:  Yes.
23              THE COURT:  Okay.  It's a very short period of
24    time, not that I necessarily follow it, but I just don't
25    want people to forget it.
```

```
 1              All right.  I'll do this.  Let's -- I'll schedule
 2    this matter for February the 2nd at 8:30.  What I want is
 3    by the 31st of January before noon a courtesy copy
 4    provided to me of a stipulation between both sides insofar
 5    as scheduling is concerned in this matter, just generally,
 6    except for the focus on a date for the hearing on the class
 7    certification.
 8              And, also, if there is discovery that is going to
 9    be requested, I want to know the general nature of that
10    discovery, what the parties are envisioning in that regard.
11              What else?  Anything else we need to discuss?
12              (Court and the clerk conferred.)
13              THE COURT:  Oh, yes.  I mean, obviously,
14    everything else here on will be filed in the MDL number on
15    this court, not your individual numbers in your other cases.
16              (Court and the clerk conferred.)
17              THE COURT:  Okay.  So why don't you explain that
18    to them right now?
19              THE CLERK:  Counsel, in order for you to start
20    docketing on the MDL matter, what you have to do is just
21    file a notice of appearance so that you can add your
22    information to the docket or filing a G6 which is a notice
23    of change of attorney information.  Although you won't be
24    changing any information; you'll just be including the fact
25    that you want to be added on the MDL docket.  Okay?
```

```
 1              THE COURT:  All right.  Anything else from

 2    anybody?

 3              MS. KRUSE:  No, Your Honor.

 4              THE COURT:  Okay.  Have a very nice day.

 5              ALL COUNSEL:  Thank you, Your Honor.

 6          (At 10:17 a.m. proceedings were concluded.)

 7

 8                            -oOo-

 9

10                         CERTIFICATE

11

12         I hereby certify that pursuant to Section 753,

13    Title 28, United States Code, the foregoing is a true and

14    correct transcript of the stenographically reported

15    proceedings held in the above-entitled matter and that the

16    transcript page format is in conformance with the

17    regulations of the Judicial Conference of the United States.

18    Date:  January 10, 2012

19

20

21

22

23                         /s/  PAT CUNEO

24                         OFFICIAL COURT REPORTER
                           CSR NO. 1600
25
```