# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | **MDL 11-2302-GW(CWx)** | Date | January 9, 2012 |
|---|---|---|---|

| Title | ***In re: A-Power Energy Generation Systems Ltd Securities Litigation*** |
|---|---|

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Pat Cuneo | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Laurence M. Rosen | Boris Feldman |
| Joy A. Kruse | Kevin D. Rising |
| Brian O. O'Mara | Vincent Schmeltz |
| Daniel S. Sommers | Vahn Alexander |
| Travis E. Downs III | |

**PROCEEDINGS:** **PROPOSED LEAD PLAINTIFF CARLOS BAETA'S MOTION FOR APPOINTMENT OF CARLOS BAETA AS LEAD PLAINTIFF PURSUANT TO §21D OF THE SECURITIES EXCHANGE ACT OF 1934 AND FOR APPROVAL OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL (filed 08/30/11);**

**RICHARD LEVINSON'S MOTION FOR CONSOLIDATION, FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL (filed 08/30/11)**

**LEONARD STEINBERG'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, TO BE APPOINTED AS LEAD PLAINTIFF AND FOR APPROVAL OF HIS CHOICE OF COUNSEL (filed 08/31/11)**

**A-POWER INVESTOR GROUP'S MOTION FOR CONSOLIDATION OF ALL RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL (filed 08/31/11);**

**JASON LI'S MOTION TO CONSOLIDATE ALL RELATED ACTIONS; AND FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF CHOICE OF COUNSEL (filed 08/31/11);**

**STATUS CONFERENCE RE MDL 2302**

Court hears oral argument. The tentative circulated and attached hereto, is adopted as the Court's final ruling. A-Power Investor Group's Motion for Consolidation of All Related Cases, Appointment as Lead Plaintiff, and Approval of Lead Counsel is **GRANTED.** Richard Levinson's Motion for Consolidation, for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel is **GRANTED** as to consolidation and **DENIED** as to appointment of lead counsel. Leonard Steinberg's Motion for Consolidation of Related Actions, to Be Appointed as Lead Plaintiff and for Approval of His

| | : | 06 |
|---|---|---|
| Initials of Preparer | JG | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | MDL 11-2302-GW(CWx) | Date | January 9, 2012 |
|---|---|---|---|
| Title | *In re: A-Power Energy Generation Systems Ltd Securities Litigation* | | |

Choice of Counsel is **GRANTED** as to consolidation and **DENIED** as to appointment of lead counsel. Jason Li's Motion to Consolidate All Related Actions; and for Appointment as Lead Plaintiff, and Approval of Choice of Counsel is **GRANTED** as to consolidation and **DENIED** as to appointment of lead counsel. The Proposed Lead Plaintiff Carlos Baeta's Motion for Appointment of Carlos Baeta as Lead Plaintiff Pursuant to §21D of the Securities Exchange Act of 1934 and for Approval of Lead Plaintiff's Choice of Lead Counsel is **DENIED.**

A Scheduling Conference re Class Certification is set for **February 2, 2012 at 8:30 a.m.** Parties will file a stipulation re scheduling by no later than January 31, 2012.

Counsel are reminded that all subsequent documents will now be filed in the MDL 11-2302 docket. Counsel can add parties/attorneys in the MDL matter by filing a G-06 form or by filing a notice of appearance.

| | : | 06 |
|---|---|---|
| Initials of Preparer | JG | |

*In re: A-Power Energy Generation Sys. Ltd. Secs. Litig.*, Case No. MDL 11-2302
Tentative Ruling on Motions for Consolidation and Appointment of Lead Plaintiff
      Counsel

      Before the Court are five[1] motions for consolidation, appointment as lead
plaintiff, and appointment as lead counsel in this multidistrict securities fraud litigation
involving A-Power Energy Generation Systems, Ltd. ("A-Power"), and several individual
defendants connected to A-Power. The Court has considered the legal memoranda found
at Docket Numbers 6, 9, 12, 16, 20, 33, 35, 37-38, 41, 44 and 46, and the materials
supporting those memoranda. The Court has also reviewed, but does not consider, the
views of A-Power on the appointment issue, as reflected in Docket Number 30.

      Under the PSLRA, the court is to appoint as lead plaintiff the person or persons
who appear(s) to be the "most capable of adequately representing the interests of class
members." 15 U.S.C. § 78u-4(a)(3)(B)(i). However, "[i]f more than one action on behalf
of a class asserting substantially the same claim or claims arising under this chapter has
been filed," a court is not to appoint a lead plaintiff until "<u>after</u> the decision on the motion
to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (emphasis added). As such,
<u>before</u> appointing a lead plaintiff, the Court must consider whether to consolidate the
four[2] pending actions.

      Consolidation under Fed. R. Civ. P. 42(a)(2) requires that the matters involve
common questions of law or fact. *See* Fed. R. Civ. P. 42(a) ("If actions before the court

---

[1] Plaintiff Leonard Steinberg has filed a non-opposition to the other lead plaintiff movants' motions,
recognizing that he does not have the most money at stake and would, therefore, not be in line for
appointment as lead plaintiff (though he does indicate his willingness to do so if the analysis precludes
others from serving in such capacity). Plaintiff Carlos Baeta has filed no opposition whatsoever, essentially
conceding, likewise, that he would not be in line for appointment. As such, the three actively competing
lead plaintiffs or lead plaintiff groups are 1) Richard Levinson, 2) Jason Li, and 3) the "A-Power Investor
Group."

[2] Although there were originally five such actions, the single action pending in the Southern District of
New York has been dismissed. The remaining actions that were MDL'd here are *Cheng v. A-Power
Energy Generation Systems Ltd.*; *Arar v. A-Power Energy Generation Systems Ltd.*; *Greenberg v. A-Power
Energy Generation Systems, Ltd.*; and *Gupta v. A-Power Energy Generation Systems, Ltd.* An additional
derivative action, *Ries v. Lu*, 2:11-cv-10695, does not appear to be encompassed within the motions now
pending before the Court.

involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."); *Pierce v. County of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008); *Ghotra by Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1057 & n.5 (9th Cir. 1997). The facts and legal issues need not be identical. *See In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998). All movants agree that the four remaining matters should be consolidated, and the Court concurs. The cases arise out of the same operative facts and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated by the Securities and Exchange Commission.

As for the appointment of a lead plaintiff, the Court must initially address the timeliness of three motions filed August 31, 2011[3], including those by Jason Li and the A-Power Investor Group ("APIG").[4]  Movant Richard Levinson[5] argues that Li's motion and APIG's motion are both untimely because they were filed on August 31, whereas the notice sent to investors was published on July 1, 2011, if that publication is to be determined by reference to Pacific time as opposed to Eastern time.[6]  If Pacific time is used for measuring 60 days from the notice, Levinson has the inside-track to becoming the lead plaintiff, whereas if Eastern time is used, he is third in line, behind both APIG

---

[3] 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II) provides that "Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of the action . . . and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class . . . ."

[4] The APIG group consists of five individuals: William J. Rooney, Dr. Matthew J. Sprunger, Dr. Terry W. Shaw, Paolo Bechini and Robert C. Treadwell.

[5] Baeta, the only other lead plaintiff applicant to have filed his motion on August 30, has not argued that the August 31 motions are untimely.  Of course, as noted above, he filed no further briefs in this matter beyond his initial motion, which was filed *prior to* the August 31 motions being filed. Moreover, insofar as he has less at stake with respect to his A-Power losses, he has less to gain than Levinson in terms of the lead plaintiff contest.

[6] The first publication of the notice was apparently in *BusinessWire*, dated "July 02, 2011 12:15 AM Eastern Daylight Time." *See* Exhibit A and paragraph 2 to Declaration of Matthew B. Kaplan in Support of Motion of Richard Levinson for Consolidation , for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel, Docket Item No. 17 in *Cheng v. A-Power Energy Generation Systems, LTD.*, Case No. CV-11-5509.

and Li.

Levinson has cited no case law under the PSLRA bearing on the question of how the notice publication date is to be determined. The Court's independent analysis has likewise uncovered no such case. There is nothing in the plain language of the statute which supports his reading, though Congress plainly could have touched upon the subject. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II); *cf. Cavanaugh v. U.S. Dist. Ct. for N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 738 (9th Cir. 2002) (noting what Congress *might* have done, but *did not* do, in passing PSLRA).

Requiring those who read the section 78u-4(a)(3)(A) publication to determine the actual date of publication by virtue of directing their attention to the place of the initial lawsuit's filing and the respective time at that location when the publication is made, as Levinson proposes, unnecessarily complicates a process that is designed to afford interested parties the simple (and simply determined) fact of notice. The publication here was plainly dated "Jul 2, 2011."[7] *See* Rosen Decl., Exh. 1 (Docket No. 10-1). Between the initial section 78u-4(a)(3)(A) publication and Levinson's counsel's own publication on July 20, 2011, no less than four other notices (including another one by the same firm that published the initial notice with an August 30 deadline date) identified the filing deadline date as August 31, 2011. *See* Rosen Decl., Exhs. 4-5, 7-8 (Docket No. 45-1). Nevertheless, Levinson's counsel's publication still identified the August 30 date. *See id.*, Exh. 9. Yet, Levinson suggests that it was incumbent upon the August 31 filers to come to the Court to resolve the filing date issue. It is unclear why he believes that obligation should rest only with them. All of these considerations counsel in the direction of a conclusion that the August 31 motions were timely filed. If Congress or the Court of Appeals believes that this Court has erred in that regard, the issue is squarely teed up for their resolution.

Beyond the timeliness issue, there is a rebuttable presumption that the person "most capable of adequately representing the interests of class members" is the "person

---

[7] Adopting Levinson's approval would also lead to somewhat incongruent results. A potential plaintiff in New York would have received the notice on July 2, 2011 at 12:15 a.m. and would therefore have until August 31st to file his or her motion to serve as lead counsel. However, a potential plaintiff in Chicago or Los Angeles, would be deemed to have had notice on July 1st at 11:15 p.m. or 9:15 p.m. respectively which would make their filing deadline August 30th.

or group of persons" who has the largest financial interest in the relief sought and who otherwise satisfies the requirements of Fed. R. Civ. P. 23. *See Cavanaugh*, 306 F.3d at 729, 732 & n.2 (9th Cir. 2002); 15 U.S.C. § 78u-4(a)(3)(B)(i), (iii); *see also Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 707 (9th Cir. 2009). A district court is to

> compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy."

*Cavanaugh*, 306 F.3d at 730 (emphasis in original; omitting internal footnote). "Courts have typically considered the 'Olsten-Lax' factors to determine who has the largest financial interest: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'" *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, No. C-06-07307 RMW, 2007 U.S. Dist. LEXIS 28406, at *11 (N.D. Cal. Apr. 16, 2007) (quoting *Olsten*, 3 F. Supp. 2d at 295); *see also Gerin v. Aegon USA, Inc.*, No. C 06-5407 SBA, 2007 U.S. Dist. LEXIS 5284, at *8 (N.D. Cal. Jan. 10, 2007) ("[D]istrict courts typically equate 'largest financial interest' with the amount of potential recovery."). The fourth factor is "most determinative." *Richardson*, 2007 U.S. Dist. LEXIS 28406, at *13.

Here, APIG collectively[8] lost $876.257.00, Li lost $785,444.35, and Levinson lost $380,252.33.[9] As a result of the Court's above determination respecting the timeliness

---

[8] The Ninth Circuit specifically noted, in *Cavanaugh v. U.S. Dist. Ct. for N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726 (9th Cir. 2002), that it had not been asked "to determine whether a group can satisfy the 'largest financial interest' requirement by aggregating losses." *Cavanaugh*, 306 F.3d at 731 n.8. No applicant appears to challenge financial aggregation here beyond the over-arching argument that APIG simply should not be considered a permissible group *at all*.

[9] Various plaintiffs take issue with the figures reported by various others. At this stage, assuming APIG's grouping is acceptable to the Court (discussed further below), only potential issues with the figure it reports would be of concern to the Court. Li argues that approximately $40,000 of APIG's collective losses would be affected by what he characterizes as "phantom trades." *See* Docket No. 35 at 3:7-13. APIG has now explained why those perceived "phantom trades" are, in fact, includable within the total figure they report. *See* Docket No. 41 at 7:17-28. Even if they were not, however, APIG would still have more at risk than Li. To the extent that Li points to errors and sloppiness in the reporting process as evidence that APIG is not an appropriate group of persons for lead plaintiff status because APIG's counsel might have been cobbling shareholders together in a hurry in order to get a viable lead plaintiff group, the Court would reject such an argument. To the extent the "cohesiveness" of a group matters (and, for reasons addressed below, it

issue, Levinson is not the lead plaintiff applicant with the most at stake financially. Thus, if APIG is an appropriate lead plaintiff (or group of lead plaintiffs) and meets the Rule 23 requirements, it would be considered presumptively most adequate in that role.

More than one person, *i.e.*, a "group of persons," may serve as the "lead plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (court is to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members"); *id.* § 78u-4(a)(3)(B)(iii); *Cavanaugh*, 306 F.3d at 731 n.8. A number of courts have taken the approach that this is only true provided that the group's interests are sufficiently similar or that the group had a pre-litigation relationship such that they will act with cohesiveness. Thus, some have reached the conclusion that a "mélange of unrelated persons" may not serve as lead plaintiff where they are "unbound by any allegiance to one another and unlikely to function as a unified whole," "especially if multiple law firms are to represent their interests." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999).

In line with the *Telxon* decision, some courts have declined to permit groups of plaintiffs to serve as the "lead plaintiff," reasoning that "[a]ppointment of lead counsel should not depend on which law firm can accumulate the most class members." *Ruland v. InfoSonics Corp.*, 2006 U.S. Dist. LEXIS 79144, at *7-11 (S.D. Cal. Oct. 23, 2006) (also citing cases reaching opposite conclusions on the group lead plaintiff issue); *see also Schriver v. Impac Mortgage Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, *26-27 (C.D. Cal. May 2, 2006); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002) (rejecting attempt by seven unrelated institutional and individual investors to be named group lead plaintiff); *cf. Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10-414MJP, C10-480MJP, C10-559MJP, 2010 U.S. Dist. LEXIS 93614, *12 (W.D. Wash. Aug. 2, 2010) (noting "widespread disagreement" amongst district courts across the country concerning whether a group of class members can aggregate their losses for purposes of qualifying as lead plaintiff). *But see Ferrari v. Gisch*, 225 F.R.D. 599, 608 (C.D. Cal. 2004) (citing cases reaching a conclusion contrary to *Telxon*). Courts taking

---

arguably should not), the question should center on whether the group is able to function in a cohesive manner, consulting with and directing counsel, going forward, not whether the process leading up to the group's aggregation was less-than-perfect. As discussed further below, APIG passes that test.

this approach have, at least at times, reasoned that the overall intent – or at least one overall intent – of the PSLRA was to ensure that shareholders/clients would be the driving force behind any securities litigation, not plaintiffs' lawyers.

The "cohesiveness" requirement has apparently been read into the statute, which speaks only of the person or persons "most capable of adequately representing" the class. However, *Cavanaugh* makes relatively clear two points: first, that "most capable" question is resolved by way of a presumption that, if not rebutted, identifies the "winning bidder" as he, she or it that has the most financially at stake and passes typicality and adequacy tests; and second, the Ninth Circuit is loath to read into the PSLRA that which is not there. *See Cavanaugh*, 306 F.3d at 738 ("Congress might, of course, have done more . . . . Whether Congress failed to enact these additional innovations because the Reform Act's sponsors believed the changes they did make were sufficient, or because they lacked the political consensus to do more, is beside the point. We are bound by what Congress did, and we may not add to the statute terms that Congress omitted even if we believe they would serve the statutory purpose."). Thus, while district courts frequently impose on group-lead plaintiff applicants the requirement that they demonstrate some measure of cohesiveness or pre-existing connection outside litigation in order to ensure that the general, overall interpretation of the PSLRA's purpose of avoiding lawyer-driven securities fraud litigation is achieved, it is not entirely clear that such a showing is mandated by the statute. After all, it plainly allows for groups to serve as a lead plaintiff or lead plaintiffs, and Congress clearly could have done something (or even anything) more than it did in that regard if it meant to shore up any holes in the PSLRA wall conceivably meant, in other respects, to keep the hordes of plaintiffs' securities lawyers at bay.[10]

This "cohesiveness" requirement could, of course, be located in the "adequacy" requirement of Rule 23 that any successful lead plaintiff applicant must satisfy. *See* 15

---

[10] Obviously, the size of a PSLRA lead plaintiff-group must have some outside limits in order to ensure its successful operation in its role. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("At some point, a group becomes too large for its members to operate effectively as a single unit."). Here, however, the size is within reasonable limits and, as discussed further below, APIG has sufficiently explained how it will operate effectively going forward. *See id.* (decline to establish a "hard-and-fast rule" for permissible group size, but nevertheless agreeing with Securities and Exchange Commission "that courts should generally presume that groups with more than five members are too large to work effectively").

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Certainly the Third Circuit took that approach in *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001). *See id.* at 266 ("If the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class."); *id.* (indicating that "the goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class"); *In re Cavanaugh*, 306 F.3d at 732 ("The district court has latitude as to what information it will consider in determining typicality and adequacy."). It is not quite so clear that the Ninth Circuit would agree. *See id.* at 736 ("The Reform Act . . . adopted the typicality and adequacy requirements of Rule 23 in haec verba. We conclude, therefore, that the Reform Act did not change the standard for adequacy, and that the adequacy inquiry remains the same in determining the lead plaintiff in securities cases as in determining the class representative in other cases brought under Rule 23."); *id.* at 736-39 (specifically rejecting Fifth Circuit's conclusion that PSLRA had raised the standard adequacy threshold). Even *Cendant* placed limitations on what considerations it found germane to a group's adequacy as a PSLRA lead plaintiff. *See Cendant*, 264 F.3d at 266 (rejecting view of courts "that have held that the statute invariably precludes a group of 'unrelated individuals' from serving as a lead plaintiff" because "[t]he statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class'").

Indeed, *Cavanaugh* itself involved a group of "five businessmen," *Cavanaugh*, 306 F.3d at 728 & n.1, and in remanding the action the Ninth Circuit ordered the district court to proceed "based on the presumption that the Cavanaugh group is the most adequate plaintiff and has made a prima facie showing of satisfying the requirements of Rule 23." *Id.* at 739. The Ninth Circuit did note that the district court had interviewed the lead plaintiff candidates at the case management hearing "about their business experience, their knowledge of the lawsuit, [and] how they came to choose their

7

attorneys."[11]  *See id.* at 728.  Yet, there is no mention as to whether the district court examined the group for "cohesiveness," and no suggestion by the Ninth Circuit that it was necessarily required to do so.

If anywhere, therefore, the question of APIG's "cohesiveness" should not come into play until the Court assesses its ability to satisfy Rule 23, particularly typicality and adequacy.  For now, notwithstanding that it might be a motley collection of five heretofore-unrelated individuals, APIG has the largest financial stake in this litigation. *Id.* at 731 ("The court started on the right foot by identifying the Cavanaugh group and each of its members as the plaintiffs with the largest financial stake in the litigation.  The court quickly went off the statutory track, however, by failing to give effect to the presumption that the Cavanaugh group would be lead plaintiff unless it failed to satisfy Rule 23(a)'s typicality or adequacy requirement.").

The typicality and adequacy elements of a Rule 23 showing are those aspects of the rule that are most determinative in a lead plaintiff analysis. *See id.* at 732 ("Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements."); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004).  The lead plaintiff applicant with the most at stake – here, APIG – need only make a *prima facie* showing of typicality and adequacy.  *See Cendant*, 264 F.3d at 264 ("[B]oth the statutory structure and the legislative history suggest that the court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive."); *see also Cavanaugh*, 306 F.3d at 731 n.6.  Others are then permitted to attempt to rebut those showings.[12]

---

[11] The Ninth Circuit was not enamored with the district court's tangential inquiries stating that: "a straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case.  Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." *Id.* at 732.

[12] The *Cavanaugh* opinion speaks of a "third step" in the process of selecting a lead plaintiff – giving other plaintiffs "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730.  The opinion does not suggest when that is to occur.  Here, the parties appear to have, at least in some measure, combined the second and third steps of the analysis, as they have at least raised arguments which they believe go some way towards

8

Even taking into consideration the "cohesiveness" issue, APIG satisfies typicality and adequacy. The group's claim is typical because it has incentives that would align with absent class members, because it is, at the very least, reasonably co-extensive with those of absent class members, and because it is based upon the same legal theory. *See Cendant*, 264 F.3d at 265; *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666-67 (C.D. Cal. 2005). It satisfies an adequacy analysis because, whatever might have been said of the circumstances surrounding its origination,[13] it has a plan for how it is going to take an active role in the litigation and the necessary decision-making processes going forward. *See* Kruse Decl. (Docket No. 7-4), Exh. D; *Cendant*, 264 F.3d at 223 n.3 ("In cases where a group serves as lead plaintiff, it is for the group's members to decide how the group will make decisions...."). The individual members profess to understand their responsibilities as lead plaintiff(s), plan to meet telephonically "at least quarterly," will consult with each other and counsel in advance of "major litigation events," will direct counsel upon having received counsel's advice, will make decisions by majority vote, and will take an "active role" in the prosecution of the case. *See* Kruse Decl., Exh. D, ¶¶ 2-4, 7. Moreover, there is nothing supporting a conclusion that APIG has interests

---

rebutting the other applicants' typicality and adequacy demonstrations. For instance, both Levinson and Li challenge APIG's "cohesiveness," Levinson argues that Steinberg's losses are exaggerated and only tenuously related to the alleged fraud (although, again, Steinberg has essentially conceded defeat on this motion), and APIG suggests Li was a short-seller. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (identifying "unique defenses" as one factor which may rebut the presumptive lead plaintiff's ability to adequately represent the class). APIG and Li have also responded to these arguments and accusations. None of the arguments challenging APIG's showing of typicality and adequacy change the Court's analysis herein that APIG satisfies those hurdles for purposes of lead-plaintiff(s) status. Under *Cavanaugh* the Court would arguably be required to remain open to any evidentiary challenge to APIG's lead plaintiff status. *See id.* at 730-31 ("The district court may need to hold an evidentiary hearing, and to make a renewed determination of typicality and adequacy.") (emphasis added). However, no lead plaintiff applicant has requested an opportunity for discovery to test any other applicant's ability to satisfy the typicality and adequacy requirements. *See id.* at 730; 15 U.S.C. § 78u-4(a)(3)(B)(iv).

[13] There is little in the record before this Court for it to disagree with Levinson and Li that APIG is a creation designed only for purposes of winning the lead plaintiff competition. *See* Kruse Decl. (Docket No. 7-4), Exh. D., ¶ 6. However, simply because a court *could* conclude that the circumstances surrounding a group's origination might preclude an adequacy finding does not mean that it must. *See Cendant*, 264 F.3d at 267 ("If, for example a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner."). Here, for example, APIG has detailed a plan demonstrating that they will regularly consult with one another. They have affirmed that they will play an active role in the litigation. Whatever might be said about their counsel's efforts to aggregate them, it is the group's commitment to an active role going-forward that is of paramount importance in this Court's view.

antagonistic to the class or that its selected counsel is incapable of or unqualified to prosecute this action. *See, e.g., Tanne*, 226 F.R.D. at 667-68; *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002).

In line with all of the above analysis, the Court would appoint APIG as lead plaintiff. As to the question of lead counsel, the lead plaintiff, not the Court, has the power to select a lawyer for the class, *see Cavanaugh*, 306 F.3d at 732-33 & n.11, though, at the same time, "it cannot be contested" that a district court has the authority to reject the lead plaintiff's choice of lead counsel, *see Cohen*, 586 F.3d at 709. As there is nothing to suggest that APIG has selected inappropriate or grossly unqualified counsel in the law firm of Lieff Cabraser Heimann & Bernstein, LLP, and as that firm appears to be qualified, *see* Kruse Decl., Exh. E, the Court would also grant that portion of APIG's motion which seeks the appointment of Lieff Cabraser Heimann & Bernstein, LLP as lead counsel. *See Cohen*, 586 F.3d at 712 ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.").

In sum, the Court would grant the motions to consolidate and grant APIG's motion to be appointed as lead plaintiff and to have its counsel appointed as lead counsel. All other motions for appointment of lead plaintiff/lead counsel would be denied.